IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> 88 FREIGHT LLC, <br><br>   Serve: Luisa Ross <br>          1874 Harmony Road <br>          Powder Springs, Georgia 30127 <br><br> and <br><br> JAMIE McCANN, individually and as Co-Administrator of the Estate of Ryan Dylan Buttari, <br><br>   Serve: 129 New Street <br>          Waverly, Virginia 23890 <br><br> and <br><br> SAMUEL A. BUTTARI, SR. as Co-Administrator of the Estate of Ryan Dylan Buttari, <br><br>   Serve: 129 New Street <br>          Waverly, Virginia 23890 <br><br> and <br><br> JESSIE MCCANN, <br><br>   Serve: 18185 Hunting Quarter Road <br>          Yale, Virginia 23897 <br><br>   Defendants. | Civil Action No. 3:21-cv-00459 |

1

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff United Specialty Insurance Company ("United Specialty"), by counsel, states as follows as its Complaint for Declaratory Judgment against Defendants 88 Freight LLC, Jamie McCann, individually and as Co-Administrator of the Estate of Ryan Dylan Buttari, Samuel A. Buttari, Sr. as Co-Administrator of the Estate of Ryan Dylan Buttari, and Jessie McCann.

### I.   Parties

1. Plaintiff United Specialty is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Texas. Thus, United Specialty is a citizen of Delaware and Texas.

2. Defendant 88 Freight LLC ("88 Freight") is a limited liability company organized and existing under the laws of the State of Georgia. Upon information and belief, the sole member of 88 Freight is Ali J. Ridges. Mr. Ridges is an individual residing in the State of Georgia and is a citizen of Georgia.

3. Defendant Jamie McCann is an individual residing in the Commonwealth of Virginia and is a citizen of Virginia. Ms. McCann is named individually and as Co-Administrator of the Estate of Ryan Dylan Buttari. Upon information and belief, Ryan Dylan Buttari was a resident of the Commonwealth of Virginia and was a citizen of Virginia at the time of his death.

4. Defendant Samuel A. Buttari, Sr. is an individual residing in the Commonwealth of Virginia and is a citizen of Virginia. Mr. Buttari is named as Co-Administrator of the Estate of Ryan Dylan Buttari. Upon information and belief, Ryan Dylan Buttari was a resident of the Commonwealth of Virginia and was a citizen of Virginia at the time of his death.

5. Defendant Jessie McCann is an individual residing in the Commonwealth of Virginia and is a citizen of Virginia.

## II. Jurisdiction and Venue

6. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

7. The jurisdiction of this Court is invoked pursuant 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff United Specialty and Defendants Jamie McCann, Samuel A. Buttari, Sr., and Jessie McCann and the amount in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00).

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## III. Facts

**The Underlying Lawsuits**

9. On October 22, 2020, the lawsuit styled *Jessie McCann v. Michael Everette, et al.*, Case No. CL20000913-00 was filed in the Circuit Court for the City of Petersburg (the "State Court Suit").

10. On January 14, 2021, the lawsuits styled *Jamie McCann v. Michael Everette, et al.* and *Jamie McCann and Samuel A. Buttari, Sr. as Co-Administrators of the Estate of Ryan Dylan Buttari v. Michael Everette, et al.* were filed in the Circuit Court for the City of Petersburg (the "Consolidated Federal Court Suits").  The Consolidated Federal Court Suits were removed to this Court and assigned case numbers 3:21-cv-00069 and 3:21-cv-00070, respectively, and were subsequently consolidated by the Court.

11. The State Court Suit and the Consolidated Federal Court Suits are collectively referred to herein as the Underlying Lawsuits.  True and accurate copies of the operative complaints (as of the date of this filing) filed in the Underlying Lawsuits are attached as Exhibits 1, 2, and 3.

12. As alleged in the Underlying Lawsuits, on or about September 26, 2020, Jamie McCann was the driver and Ryan Dylan Buttari and Jessie McCann were passengers in a 1994 Ford Ranger Super Cab pick-up truck headed in a northerly direction on I-95 at or near Exit 51 when they were involved in an automobile accident allegedly caused by Michael Everette (the "Accident").

13. The Underlying Lawsuits assert that Michael Everette was operating a 2007 Peterbilt 387 tractor trailer at the request and benefit of M and C Transfer, LLC, as an agent and employee for M and C Transfer, LLC, and with M and C Transfer, LLC's permission and within the scope of Mr. Everette's authority and employment.

14. The State Court Suit contains the following allegations pertaining to 88 Freight:

> That at the same time, place and date, defendant, Michael Everette, was operating a 2007 Peterbilt 387 tractor trailer, at the request and benefit of defendants, M and C Transfer, LLC and 88 Freight, LLC, and the defendant, Michael Everette, operated said vehicle as an agent and employee for defendants, M and C Transfer, LLC and 88 Freight, LLC, by and with defendants, M and C Transfer, LLC and 88 Freight, LLC's permission and within the scope of defendant Michael Everette's authority and employment, headed in a northerly direction on I-95 at or near Exit 51[.]

15. The Consolidated Federal Court Suits contain the following allegations pertaining to 88 Freight:

> That at the same time, place and date, defendant, Michael Everette, was operating a 2007 Peterbilt 387 tractor trailer, at the request and benefit of defendant, 88 Freight, LLC, and the defendant, Michael Everette, operated said vehicle as an agent and employee for defendant, 88 Freight, LLC, by and with defendant, 88 Freight, LLC's permission and within the scope of defendant Michael Everette's authority and employment, headed in a northerly direction on I-95 at or near Exit 51; and
>
> That on or about September 24, 2020, Wendy Butterick, an employee of defendant, 88 Freight, LLC, asked Michael Everette to complete a "New Carrier setup" to haul freight for, or on behalf, of 88 Freight, LLC, and;

That on or about September 24, 2020, Wendy Butterick, an employee of defendant 88 Freight, LLC, asked Michael Everette to complete a "New Carrier setup" to haul freight for, or on behalf, of 88 Freight, LLC using an 88 Freight, LLC e-mail address and with a signature line reading "88 Freight, LLC," and;

That on or about September 25, 2020, Wendy Butterick, an employee of defendant, 88 Freight, LLC arranged for Michael Everette to haul a load for an on behalf of 88 Freight, LLC on September 26, 2020, and;

That on or about September 25, 2020, Wendy Butterick, an employee of defendant, 88 Freight, LLC instructed and dispatched Michael Everette to haul said load using an 88 Freight, LLC e-mail address and a signature line reading "88 Freight, LLC," and;

That at all times relevant hereto, the defendants, Michael Everette and M & C Transfer, LLC were hauling a load on behalf of 88 Freight, LLC and under dispatch from 88 Freight, LLC, and;

That the defendant, 88 Freight, LLC instructed and commanded Michael Everette that all communications regarding the load hauled on September 26, 2020, were to be done using an 88 Freight, LLC e-mail address and a telephone number assigned to 88 Freight, LLC, and;

That at all times relevant hereto, the defendant 88 Freight, LLC controlled the means and methods of defendants, Michael Everette and M and C Transfer, LLC's transport of loads on its behalf, including, but not limited to, requiring Michael Everette to use specific chains and binders to secure a load, taking photographs of said load and sending it to an 88 Freight, LLC e-mail address or phone number before Michael Everette could start his trip, reserving the right to fine and/or withhold payment to Michael Everette if the load was not stacked or secured properly, reserving the right to fine and/or withhold payment to Michael Everette if Michael Everette was law, and;

16. The Underlying Lawsuits seek a collective total of $25,074,500.00 in compensatory damages and $700,000.00 in punitive damages, plus costs and interest.

**The Relationship Between 88 Freight, Halal Freight, and M and C Transfer LLC**

17. 88 Freight is a trucking company owned by Ali Ridges.

18. Wendy Butterick, wife to Ali Ridges, works for 88 Freight.

19. Ms. Butterick is the owner of Halal Freight, a trucking broker.

5

20. Halal Freight and 88 Freight are separate entities.

21. On September 24, 2020, Ms. Butterick, acting on behalf of Halal Freight, requested that Michael Everette, as owner of M and C Transfer LLC complete a New Carrier Setup form, provide his motor carrier (MC) number and W9, and provide a certificate of insurance listing Halal Freight as the certificate holder.

22. On September 25, 2020, M and C Transfer LLC provided Ms. Butterick with a certificate of insurance listing Halal Freight as the certificate holder.

23. On September 26, 2020, M and C Transfer LLC accepted a load assigned by Halal Freight.

24. Halal Freight made arrangements for the load to be hauled by M and C Transfer LLC.

25. The load was being hauled by M and C Transfer LLC as the motor carrier.

26. 88 Freight was not involved in assigning the load to M and C Transfer LLC or otherwise making arrangements for the load to be hauled by M and C Transfer LLC.

27. 88 Freight did not act as the motor carrier with respect to the load.

28. Michael Everette, as owner of M and C Transfer LLC, was acting on behalf of M and C Transfer LLC and was hauling a load as the motor carrier on assignment from the trucking broker, Halal Freight, at the time of the Accident.

**The Policy**

29. United Specialty issued commercial auto policy number GWP60054, effective May 5, 2020 to May 5, 2021 to 88 Freight LLC (as the named insured) (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit 4.

30. The declarations of the Policy list 88 Freight LLC as the only named insured, identify 88 Freight's mailing address in Powder Spring, Georgia, and provide a description of the insured's business as "TRUCKER FOR HIRE" as set forth below.

```
POLICY NUMBER: GWP60054 00                                           IL DS 00 09 08

                        COMMON POLICY DECLARATIONS

UNITED SPECIALITY INSURANCE COMPANY        NTA GENERAL INSURANCE AGENCY
        PO BOX 24622                       6602 OWENS DRIVE - SUITE 300
      FORT WORTH, TX 76124                      PLEASANTON, CA  94588

NAMED INSURED:    88 FREIGHT LLC
MAILING ADDRESS:  1874 HARMONY RD
                  POWDER SPRINGS GA 30127
POLICY PERIOD: FROM 05/05/2020   TO  05/05/2021    AT 12:01 A.M. STANDARD
TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

BUSINESS DESCRIPTION  | TRUCKER FOR HIRE
```

31. Item Two of the declarations of the Policy lists the Covered Auto Designation Symbols for each coverage provided by the Policy. With respect to liability coverage, the declarations list Covered Auto Designation Symbols 67 and 68 as set forth below:

**ITEM TWO**
**Schedule Of Coverages And Covered Autos**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Truckers Coverage Form next to the name of the coverage.**

| Coverages | Covered Autos | Limit | Premium |
|---|---|---|---|
| Liability | 67,68 | $ 1,000,000 | $ |

32. Section I – Covered Autos of the Motor Carrier Coverage Form (Form CA 00 20 10 13) of the Policy provides the descriptions of the relevant Covered Auto Designation Symbols as follows:

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

\*\*\*

| 67 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
|---|---|---|
| 68 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |

33. The Policy also contains an Amendment of Covered Auto Designation Symbol endorsement, which modifies the description of Covered Auto Designation Symbol 68 as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT OF COVERED AUTO DESIGNATION SYMBOL**

This endorsement modifies insurance provided under the following:

MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Under Section I – Covered Autos in the Motor Carrier Coverage Form, Paragraph A. Description Of Covered Auto Designation Symbols is amended as follows:

The Description of Covered Auto Designation Symbol 68 is deleted in its entirety and is replaced by the following:

Only those "autos" you lease, hire, rent or borrow without a driver for 30 days or less. This does not include any "private

passenger type" "auto" you lease, hire, rent or borrow from any member of your household, or any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

34. Item Three of the declarations of the Policy, Schedule of Covered Autos You Own, identifies covered autos specifically described in the policy by reference to an attached Schedule of Covered Autos You Own, as follows:

**ITEM THREE**
**Schedule Of Covered Autos You Own**

| Covered Auto Number: | See Attached Schedule of Covered Autos You Own |
|---|---|
| Town And State Where The Covered Auto Will Be Principally Garaged | See Attached Schedule of Covered Autos You Own |
| Description (Year, Model, Trade Name, Body Type, Serial Number (S), Vehicle Identification Number (VIN)) | See Attached Schedule of Covered Autos You Own |

35. In turn, the attached Schedule of Covered Autos You Own referred to in Item Three of the declarations of the Policy states in relevant part:

**SCHEDULE OF COVERED AUTOS**

| | | | | |
|---|---|---|---|---|
| 1 | 2007 | FREIGHTLINER | TRACTOR | VIN-1FUJA6CK87LV20787 |
| 2 | 2012 | FREIGHTLINER | TRACTOR | VIN-1FUJA6CG82LJ01942 |

36. The declarations of the Policy also contain a list of Scheduled Drivers, which provides as follows:

9

| SCHEDULED DRIVERS | | | |
|---|---|---|---|
| Driver | Date of Birth | Drivers License | Notes |
| 1  ALI JEHAD RIDGES | 03/26/1971 | 053846440 | |
| 2  DAVID JAMES BOSARD | 07/07/1952 | 030650655 | |
| 3  HOLLIS OMARI ANTHONY | 12/30/1984 | 060428081 | EXCLUDED |
| 4  JAMES WARREN CRAWFORD | 11/15/1967 | 05171567 | EXCLUDED |
| 5  MALIK HASSAN ZIYAD | 06/20/1968 | 042518581 | |
| 6  BASIL ABDULLAH | 07/02/1977 | 051056282 | EXCLUDED |

37. The relevant insuring agreement of the Policy, contained in the Motor Carrier Coverage Form, provides in pertinent part as follows:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A.** **Coverage**

We will pay all sum an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

***

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we will have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

38. Further, the Motor Carrier Coverage Form of the Policy contains the following relevant provisions regarding who qualifies as an insured under the Policy:

**1.** **Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

10

    b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

        (1)    The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

        (2)    Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

        (3)    Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

        (4)    Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

        (5)    A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

    c.    The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

    d.    The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

    e.    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

        (1)    Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

    (a)    If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

    (b)    If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures ona primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

(2)    Any rail, water or air carrier and its "employee" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost of expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

    (a)    is being transported by the carriers; or

    (b)    is being loaded on or unloaded from any unit of transportation by the carrier.

39.    The Motor Carrier Coverage Form also contains the following relevant definition:

**SECTION VI – DEFINITIONS**

\*\*\*

L.    "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

40.    In addition, the Policy contains an Exposure/Entity Exclusion endorsement (Form CA2 25 03 01 15), which provides in relevant part as follows:

**EXPOSURE/ENTITY EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

12

>BUSINESS AUTO COVERAGE FORM
>MOTOR CARRIER COVERAGE FORM
>TRUCKERS COVERAGE FORM

>**Section II – Liability Coverage B. exclusions:** is changed by adding the following exclusions:

>This insurance does not apply to any of the following:

>>1. "Bodily Injury" or "Property Damage" that was not caused by the "Named Insured" or resulting from the ownership, maintenance or use of a covered "Auto" by the "Named Insured"; or

>>2. "Bodily injury" or "Property Damage" caused by any other person or entity doing business with the "Named Insured" unless such person or entity is disclosed to us in writing and scheduled on the "Named Insured's" policy.

41. M and C Transfer LLC was not disclosed to United Specialty in writing nor scheduled on the Policy.

42. The Policy also contains a Broker Liability Exclusion endorsement (Form CA2 25 18 01 15), which provides in relevant part as follows:

>**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

>**BROKER LIABILITY EXCLUSION**

>This endorsement modifies insurance provided under the following:

>>BUSINESS AUTO COVERAGE FORM
>>GARAGE COVERAGE FORM
>>MOTOR CARRIER COVERAGE FORM
>>TRUCKERS COVERAGE FORM

>With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

>>A. Exclusions

>>This insurance does not apply to:

  1. Liability arising out of your operations or activities as a "Freight Broker".

  2. Liability arising out of the operation, maintenance or use of any "Auto" by any "Trucker" hired, selected or retained by you for the purpose of transporting property.

  3. Liability arising out of neglecting hiring, retention or selection of any "Trucker".

  4. Liability assumed under or arising out of any contract or agreement made in connection with your operations or activities as a "Freight Broker" or otherwise for the purpose of arranging for the transportation of property by a "Trucker". This exclusion applies to liability assumed under any such contract or agreement regardless of whether the contract is an "Insured Contract".

 B. Additional Definitions

  1. "Freight Broker" means any person or corporation who, for compensation, arranges or offers to arrange the transportation of property by any "Trucker".

43. Further, the Policy contains a Punitive, Exemplary and Extracontractual Damage Exclusion (Form CA2 25 18 01 15), which provides in relevant part as follows:

**PUNITIVE, EXEMPLARY AND EXTRACONTRACTUAL DAMAGE EXCLUSION**

This endorsement modifies insurance provided under the following:

 BUSINESS AUTO COVERAGE FORM
 BUSINESS AUTO NON-TRUCKERS LIABILITY COVERAGE FORM
 GARAGE COVERAGE FORM
 MOTOR CARRIER COVERAGE FORM
 TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

14

The following exclusion is added:

PUNITIVE, EXEMPLARY AND EXTRACONTRACTUAL DAMAGE

The Policy does not insure against or provide indemnity for fines, penalties, exemplary or punitive damages or any other type or kind of judgment or award which does not compensate the party benefiting from the award or judgment for any actual loss or damage sustained.

This exclusion applies to all coverages provided under this Policy.

44. Finally, the Policy contains United States Department of Transportation Federal Motor Carrier Safety Administration Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980 (Form MCS-90) (the "MCS-90 endorsement"), which provides in relevant part as follows:

Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980

# FORM MCS-90

Issued to __88 FREIGHT LLC__ of __GA__
(Motor Carrier name)     (Motor Carrier state or province)

Dated at __Pleasanton, CA 94588__ on this __04__ day of __May__, __2020__

Amending Policy Number: __GWP60054 00__   Effective Date: __05/05/2020__

Name of Insurance Company: __UNITED SPECIALTY INSURANCE CO__

Countersigned by: __Yogesh Kumar__
(authorized company representative)

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown (check only one

☒ This insurance is primary and the company shall not be liable for amounts in excess of $ __750,000__ for each accident.

☐ This insurance is excess and the company shall not be liable for amounts in excess of $ _____ for each accident in excess of the underlying limit of $ _____ for each accident.

\*\*\*

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**Accident** includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**Motor Vehicle** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**Bodily Injury** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**Property Damage** means damage to or loss of use of tangible property.

**Environmental Restoration** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**Public Liability** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

## COUNT I – DECLARATORY JUDGMENT (Duty to Defend)

45. United Specialty realleges and reincorporates herein by reference the allegations set forth in the foregoing paragraphs.

46. An actual controversy exists between United Specialty on the one hand and 88 Freight on the other hand concerning whether 88 Freight is entitled to a defense against the Underlying Lawsuits under the Policy. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

47. United Specialty seeks a declaration pursuant to 28 U.S.C. § 2201 and § 2202 that 88 Freight is not entitled to a defense against the Underlying Lawsuits under the Policy.

48. United Specialty is entitled to this declaratory judgment:

   a. Because the Underlying Lawsuits do not allege that the Accident resulted from the ownership, maintenance or use of a covered auto under the Policy;

   b. Because 88 Freight does not qualify as an insured on the Policy with respect to the Accident under the allegations of the Underlying Lawsuits;

   c. Because, based on the allegations of the Underlying Lawsuits, coverage under the Policy is excluded by the Exposure/Entity Exclusion endorsement;

   d. Because, based on the allegations of the Underlying Lawsuits, coverage under the Policy is excluded by the Broker Liability Exclusion;

   e. Because, based on the allegations of the Underlying Lawsuits, the MCS-90 endorsement is not triggered because 88 Freight was not acting as a motor carrier of property with respect to the Accident;

   f. Because, based on the allegations of the Underlying Lawsuits, the MCS-90 endorsement is not triggered because 88 Freight's alleged liability does not result from 88 Freight's negligence in the operation, maintenance or use of motor vehicles; and

   g. Because, to the extent that the MCS-90 endorsement is triggered by the allegations of the Underlying Lawsuits, the MCS-90 endorsement does not impose any defense obligation on United Specialty.

**COUNT II – DECLARATORY JUDGMENT (Duty to Indemnify)**

49. United Specialty realleges and reincorporates herein by reference the allegations set forth in the foregoing paragraphs.

50. An actual controversy exists between United Specialty on the one hand and 88 Freight, Jamie McCann, Samuel A. Buttari, Sr., and Jessie McCann on the other hand concerning whether 88 Freight is entitled to indemnification for any judgments rendered against 88 Freight in the Underlying Lawsuits under the Policy. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

51. United Specialty seeks a declaration pursuant to 28 U.S.C. § 2201 and § 2202 that 88 Freight is not entitled to indemnification against any judgments entered against it in the Underlying Lawsuits under the Policy.

52. United Specialty is entitled to this declaratory judgment:

    a. Because the Accident did not result from the ownership, maintenance or use of a covered auto under the Policy;

    b. Because 88 Freight does not qualify as an insured on the Policy with respect to the Accident;

    c. Because coverage under the Policy is excluded by the Exposure/Entity Exclusion endorsement;

    d. To the extent that coverage under the Policy is excluded by the Broker Liability Exclusion;

    e. Because the MCS-90 endorsement is not triggered because other insurance is available to compensate the claimants in the Underlying Lawsuits up to the statutory limits;

    f. Because the MCS-90 endorsement is not triggered because 88 Freight was not acting as a motor carrier of property with respect to the Accident; and

    g.    Because the MCS-90 endorsement is not triggered because 88 Freight was not negligent in the operation, maintenance or use of motor vehicles with respect to the Accident; and

    h.    To the extent any judgment for punitive damages is awarded against 88 Freight, coverage for such judgment is excluded by the Punitive, Exemplary and Extracontractual Damage Exclusion.

## COUNT III – DECLARATORY JUDGMENT (MCS-90 Endorsement)

53.    United Specialty realleges and reincorporates herein by reference the allegations set forth in the foregoing paragraphs.

54.    An actual controversy exists between United Specialty on the one hand and 88 Freight, Jamie McCann, Samuel A. Buttari, Sr., and Jessie McCann on the other hand concerning United Specialty's obligations under the MCS-90 endorsement. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

55.    United Specialty seeks a declaration pursuant to 28 U.S.C. § 2201 and § 2202 that, to the extent that United Specialty has any obligation to make payments on behalf of 88 Freight under the MCS-90 endorsement:

    a.    United Specialty's liability is limited to $750,000.00; and

    b.    88 Freight is obligated to reimburse United Specialty for any amounts paid by United Specialty on 88 Freight's behalf under the MCS-90 endorsement.

56.    United Specialty is entitled to this declaratory judgment pursuant to the terms of the MCS-90 endorsement.

WHEREFORE, United Specialty respectfully requests that this Court:

1.    Declare that United Specialty has no obligation to defend 88 Freight against the Underlying Suits under the Policy;

Case 3:21-cv-00459-REP   Document 1   Filed 07/15/21   Page 20 of 20 PageID# 20

2. Declare that United Specialty has no obligation to indemnify 88 Freight against any judgment entered against 88 Freight in the Underlying Suits under the Policy;

3. Declare that, to the extent that United Specialty has any obligation to make payments on behalf of 88 Freight under the MCS-90 endorsement, United Specialty's liability is limited to $750,000.00 and 88 Freight is obligated to reimburse United Specialty for any payments made by United Specialty on 88 Freight's behalf under the MCS-90 endorsement; and

4. Award such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**UNITED SPECIALTY INSURANCE COMPANY,**

By: /s/ Lindsay L. Rollins
**Counsel**

Lindsay L. Rollins (VSB.: 86362)
HANCOCK, DANIEL, & JOHNSON P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia  23060
lrollins@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile:  (804) 967-9888
*Counsel for United Specialty Insurance Company*

20